UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

UNITED STATES OF AMERICA,    )
                             )
        Plaintiff,           )
                             )
    V.                       )        No. 1:97-CR-00118-RLY-DKL
                             )
ANTHONY BAILEY,              )
                             )
        Defendant.           )

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A)(I)

Defendant Anthony Bailey and his co-defendants terrorized several people, including a teenage girl, when they decided to rob a bank, flee from the scene, and hold a family at gunpoint.  Bailey proceeded to trial and was convicted.  The district court imposed a sentence of 728 months, which reflected the consecutive mandatory sentences for three counts and the high end of the Guidelines for the remaining three counts.   In his instant motion, Bailey seeks for the fourth time to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  In particular, he invokes the newly promulgated U.S.S.G. § 1B1.13(b)(6) to claim again that the First Step Act's reduction in the mandatory minimum sentence for multiple violations of 18 U.S.C. § 924(c) should be applied to him retroactively.

The Court should deny Bailey's motion.  The view of the Department of Justice is that the Sentencing Commission exceeded its Congressionally delegated authority in promulgating U.S.S.G. § 1B1.13(b)(6).  The Seventh Circuit's precedent

in *United States v. Thacker*, 4 F.4th 569 (7th Cir. 2021), among other Supreme Court precedent and doctrine, makes clear changes in sentencing law are not "extraordinary and compelling" reasons to justify release pursuant to § 3582(c)(1)(A)(i). Because U.S.S.G. § 1B1.13(b)(6) contravenes the statute, it cannot form the basis for a reduction in sentence.

The government respectfully requests that the Court first address this foundational legal question. Should the Court determine that, contrary to the Department's view, the new Guidelines provision is in fact valid, the government would then request leave to address the 18 U.S.C. § 3553(a) factors and the appropriate final sentence in this case. The government notes, however, that the Court has already addressed these factors in its August 13, 2020 Order denying Bailey's February 28, 2020 compassionate release motion and concluded that they precluded relief. (*See* Dkt. 112.)

Finally, the Court should reject Bailey's other arguments, which are the same arguments he presented in his prior compassionate release motions on February 28, 2020 and July 20, 2022, including his medical conditions, COVID-19, and rehabilitation. (*See* Dkt. 87, 104, 151.) The Court already denied Bailey's claims under these grounds and should do so again here. Bailey's additional claim regarding harsh prison conditions is not an extraordinary and compelling reason and cannot form the basis for relief.

## BACKGROUND

### I.   Factual Background

On September 3, 1997, Bailey and Gregory Jones threatened a UPS driver at gunpoint, ordering him to get into his UPS van and remove his uniform. (Exhibit 1, Presentence Investigation Report ("PSR")[1] ¶ 4.) Bailey and Gregory Jones then restrained the victim in the UPS van using flex-cuffs while they made their way inside the Chesterfield Branch of National City Bank of Indiana. (*Id.*) Bailey, Gregory Jones, and a third man, Jerry Jones, entered the bank and unsuccessfully attempted to handcuff the bank manager, ultimately tying her ankles together. Jerry Jones then brandished a handgun and ordered everyone to the floor. (*Id.* ¶ 5.) Jerry Jones emptied the bank's vault, obtaining $104,500 in cash, and took another zippered bank bag from a teller station. Bailey served as the lookout, watching the tellers and for other people who might enter the bank. (*Id.*)

The three men left the bank together. One of them drove the UPS van, where the UPS driver was still being held, and the other two drove a red Toronado. A short distance away, they abandoned the UPS van with the UPS driver still tied up inside and left together in the red Toronado. Several witnesses had identified the car, however, and they were quickly spotted by police heading southbound on I-69. (*Id.* ¶ 6.)

---

[1] For ease of reference, the government filed a copy of Bailey's PSR under seal as Exhibit 1 to this Response.

To avoid capture, Bailey and the Joneses crossed the median of the interstate into the northbound lanes and then into a ditch in a cornfield.  They ran from the car into the cornfield.  One of them was carrying a gun. (*Id.*¶ 7.)

The three men came across the residence of a family and went inside to hide. A short time later, the family's school-aged daughter entered her bedroom and opened her closet door to find Bailey pointing a gun at her.  Bailey and the Joneses held the family at gunpoint and ordered the father to drive them to Indianapolis in his truck while the mother and daughter were tied up in the house.  Before they left, the three men threatened to kill the father if the police were called.  (*Id.*¶ 8.)

Bailey and his co-defendants' conduct had a tremendous impact on their victims.  The school-aged daughter was so traumatized that, nearly seven months later, she was still unable to leave her closet doors closed or venture downstairs alone in her own home.  The victims were in fear for their lives or their family's lives and experienced a deep loss in their sense of security.  (*Id.* ¶ 10.)

## II.    Procedural Background

### A.    Charges, Conviction, and Sentencing

Bailey was charged with one count of Armed Bank Robbery in violation of 18 U.S.C. § 2113(a) and (d), two counts of Carjacking in violation of 18 U.S.C. § 2119, and three counts of Use of a Firearm During a Crime of Violence in violation of 18 U.S.C. § 924(c).  Bailey proceeded to trial and was convicted by a jury of all counts.

The United States Probation Office calculated Bailey's criminal history category as IV, based on a total of seven criminal history points.  These criminal

history points flowed from prior convictions for battery on a police officer, robbery, robbery (again), and auto theft. (PSR ¶¶ 63-67.) Several of Bailey's other prior convictions did not receive any criminal history points, including five juvenile convictions and six adult convictions. (*Id.* ¶¶ 52-62.)

Statutorily, the carjacking counts (Counts 1 and 5) each carried a maximum sentence of 15 years. (*Id.* ¶ 84.) The armed-bank robbery count (Count 3) carried a maximum of 25 years. (*Id.*) Count 2 carried a mandatory consecutive five-year sentence, and at the time, Counts 4 and 6 each required a mandatory consecutive 20-year sentence. (*Id.*)

The district court sentenced Bailey to 188 months on Count 3 (armed robbery) and 180 months on Counts 1 and 5 (carjacking), to be served concurrently. (*See* Exhibit 2, Judgment[2] at 2.) This was the high end of the applicable Guidelines range of 151 to 188 months based on Bailey's criminal history category of IV. (Exhibit 1 ¶ 85.) The district court also imposed the mandatory consecutive sentences of 60 months, 240 months, and 240 months, pursuant to Section 924(c) on Counts 2, 4, and 6, respectively. Bailey's aggregate term of imprisonment was 728 months. (Exhibit 2 at 2.)

### B.    Post-Conviction Proceedings

Bailey appealed his conviction, and the Seventh Circuit affirmed. *United States v. Bailey*, 188 F.3d 773 (7th Cir. 1999). Bailey filed his first motion for relief pursuant to 28 U.S.C. § 2255 on June 26, 2014, which the Court rejected on August

---

[2] Again, for ease of reference, the government has filed the Judgment as Exhibit 2.

1, 2014. (Dkt. 8, 10.) Bailey filed a second and successive Section 2255 motion on June 24, 2016, which the Court denied on June 8, 2017. (Dkt. 32, 36.)

Bailey has sought compassionate release on three separate occasions prior to the instant motion. First, on April 28, 2008, Bailey moved for reduction of his sentence, which was denied on January 15, 2014. (Dkt. 5, 7.)

On February 28, 2020, Bailey again moved to reduce his sentence, arguing he could establish extraordinary and compelling reasons for release because he would have received a much shorter sentence if sentenced in 2020 and because his health conditions of pre-diabetes, high blood pressure, and breathing issues put him at risk of severe symptoms if he were to contract COVID-19. (Dkt. 104 at 7.) The Court denied his motion on August 13, 2020, assuming without deciding that even if Bailey's medical condition in the context of COVID-19 constituted an extraordinary and compelling reason to release him, the Section 3553(a) factors weighed against release. (Dkt. 112.) In particular, the Court recognized Bailey's "model behavior" while incarcerated, but nonetheless concluded that Bailey's prior criminal history, the nature and circumstances of the offense, the need to protect the public from future crimes of Bailey, and the need to avoid unwarranted sentencing disparities with Bailey's co-defendants all weighed against his release. (*Id.* at 7-10.) The Seventh Circuit affirmed. *See United States v. Bailey*, 844 F. App'x 914 (7th Cir. Apr. 21, 2021).

Just a year and a half ago, on July 20, 2022, Bailey filed yet another motion to reduce his sentence, raising the same arguments (and more) from his prior

motion. (Dkt. 151.) Specifically, Bailey argued that: (1) he suffered from medical conditions that increase his risk from COVID-19; (2) he would likely receive a shorter sentence if sentenced under today's law; (3) his sentence was uncommonly long; (4) he was young at the time of his crime and has reached an age where recidivism is less likely; (5) he had a viable, confirmable release plan; and (6) he had made extraordinary steps toward rehabilitation. (*Id.*) The Court rejected Bailey's motion, finding he had not established extraordinary and compelling reasons for a sentence reduction. (Dkt. 152.) In particular, the Court concluded that, with respect to his medical condition and COVID-19, Bailey had not demonstrated that he could not "receive or benefit from a vaccine," which precluded relief. (*Id.* at 3 (quoting *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021).) As to his sentence, the Court cited the binding circuit precedent in *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021), which foreclosed Bailey's argument that changes to the sentencing scheme under Section 924(c) were an extraordinary and compelling reason. (*Id.* at 4.) The Court rejected Bailey's remaining arguments. (*Id.* at 3-6.)

### C.    Legal Background

#### 1.    Sentencing Reform Act of 1984

The Sentencing Reform Act of 1984 "overhaul[ed] federal sentencing practices." *Tapia v. United States*, 564 U.S. 319, 325 (2011). To make prison terms more determinate, Congress established the Sentencing Commission as an independent agency in the Judicial Branch and "authorized it to promulgate Sentencing Guidelines and to issue policy statements." *Dillon v. United States*, 560

U.S. 817, 820 (2010); *see* 28 U.S.C. §§ 991, 994(a).  "The Commission was born of congressional disenchantment with the vagaries of federal sentencing and of the parole system," and Congress directed the Commission to "eliminate unwarranted disparities in punishment of similar defendants who commit similar crimes." *Neal v. United States*, 516 U.S. 284, 290-91 (1996).

Congress also abolished the practice of federal parole, specifying that a "court may not modify a term of imprisonment once it has been imposed" except in certain enumerated circumstances.  18 U.S.C. § 3582(c); *see Tapia*, 564 U.S. at 325.  One of those circumstances, set forth in 18 U.S.C. § 3582(c)(1)(A) (and commonly referred to as "compassionate release"), authorizes a court to "reduce [a] term of imprisonment . . . , after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds," as relevant here, that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." As originally enacted, Section 3582(c)(1)(A) authorized such reductions only "upon motion of the Director of the Bureau of Prisons" (BOP).  Sentencing Reform Act § 212(a)(2), 98 Stat. 1998.

Congress directed the Sentencing Commission to promulgate "general policy statements regarding . . . the appropriate use of . . . the sentence modification provisions set forth in [Section] 3582(c)."  28 U.S.C. § 994(a)(2)(C).  Congress instructed the Commission, in promulgating policy statements regarding Section 3582(c)(1)(A), to "describe what should be considered extraordinary and compelling

8

reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Congress specified that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.*

In 2006, the Commission promulgated Sentencing Guidelines § 1B1.13, p.s. As amended in 2016, the policy statement described four categories of reasons that should be considered extraordinary and compelling: "Medical Condition of the Defendant," "Age of the Defendant," "Family Circumstances," and "Other Reasons" "determined by the Director of the Bureau of Prisons" to be "extraordinary and compelling" "other than, or in combination with," the reasons described in the other three categories. Sentencing Guidelines App. C Supp., Amend. 799 (Nov. 1, 2016).

### 2.    First Step Act of 2018

In the First Step Act of 2018, Congress amended Section 3582(c)(1)(A) to allow defendants, as well as the BOP itself, to file motions for a sentence reduction. See Pub. L. No. 115-391, Tit. VI, § 603(b), 132 Stat. 5194, 5239. As modified, Section 3582(c)(1)(A) now states:

> the court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier*, may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A) (emphasis added).

Shortly after the First Step Act's enactment, the Sentencing Commission lost a quorum of voting members, and remained without a quorum for more than three years. *See* 88 Fed. Reg. 28,254, 28,256 (May 3, 2023). The Commission thus did not immediately amend the policy statement to account for the First Step Act's procedural change. In the intervening years, nearly every circuit held that the existing policy statement's description of what should be considered "extraordinary and compelling" reasons for a sentence reduction was not applicable to defendant-filed motions. *See United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020); *see also United States v. Ruvalcaba*, 26 F.4th 14, 21 (1st Cir. 2022) (collecting cases). *But see United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021).

As a result, and in the absence of a binding policy statement, the courts of appeals were obliged to construe the plain meaning of the phrase "extraordinary and compelling reasons" as used in Section 3582(c)(1)(A)(i). The majority of circuits to consider the question—including the Seventh Circuit—determined that a change in the law that applies prospectively, whether considered alone or in combination with other factors, cannot constitute an "extraordinary and compelling" reason for a sentence reduction. *See United States v. Thacker*, 4 F.4th 569, 571 (7th Cir. 2021); *see also United States v. Andrews*, 12 F.4th 255, 261 (3d Cir. 2021); *United States v. McCall*, 56 F.4th 1048, 1050 (6th Cir. 2022) (en banc); *United States v. Crandall*, 25 F.4th 582, 585-86 (8th Cir. 2022); *United States v. Jenkins*, 50 F.4th 1185, 1198-1200 (D.C. Cir. 2022); *see also United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam) (unpublished). Four circuits, in

10

contrast, have taken the view that a change in the law can form part of an individualized assessment of whether to grant a sentence reduction, but only in combination with other case-specific factors. *Ruvalcaba*, 26 F.4th at 28; *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020); *United States v. Chen*, 48 F.4th 1092, 1097-98 (9th Cir. 2022); *United States v. McGee*, 992 F.3d 1035, 1047-48 (10th Cir. 2021).

### 3. Sentencing Guidelines Amendments of 2023—U.S.S.G. § 1B1.13(b)(6)

In 2022, the Sentencing Commission regained a quorum, and after public notice and comment voted on April 5, 2023, to promulgate amendments to the Guidelines Manual, including to Section 1B1.13's policy statement. 88 Fed. Reg. 28,254, 28,254-28,281 (May 3, 2023); *see also* Sentencing Commission Public Meeting Tr. 27-82 (Apr. 5, 2023) ("4/5/23 Tr."). The amendments to U.S.S.G. § 1B1.13 render the policy statement applicable to defendant-filed motions. As relevant here, the amendments also purport to allow, with certain limitations, consideration of changes in law—including ones Congress has chosen not to make retroactive—when determining whether a defendant has presented an extraordinary and compelling reason for a sentence reduction. That change is reflected in new Section 1B1.13(b)(6) and (c), which provide:

> (6) UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between

11

> the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.
>
> (c) LIMITATION ON CHANGES IN LAW.—Except as provided in § 1B1.13(b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

88 Fed. Reg. at 28,255; see U.S.S.G. § 1B1.13(b)(6), (c).

The Commission divided 4-3 on whether to promulgate the amendments to Section 1B1.13. *See* 4/5/23 Tr. 81-82. The dissenting Commissioners explained that, in their view, the policy statement "goes further than the Commission's legal authority extends," and the Commission had made "a seismic structural change to our criminal justice system without congressional authorization or directive." *Id.* at 60 (Commissioner Wong, delivering joint statement). In particular, the Commission's decision to allow nonretroactive changes in law to establish a basis for a sentence reduction "supplants Congress's legislative role" and would authorize courts "to revisit duly imposed criminal sentences at the ten-year mark based on intervening legal developments that Congress did not wish to make retroactive." *Id.* at 60-61. "The separation of powers problem" with that result, the dissenting Commissioners explained, "should be apparent," as "[i]t is not the Commission's role to countermand Congress's legislative judgments." *Id.* at 61.

12

The Commission submitted its proposed Guidelines amendments to Congress on April 27, 2023.  Because Congress did not act to modify or disapprove of the amendments, they became effective on November 1, 2023.  88 Fed. Reg. at 28,254; see 28 U.S.C. § 994(p).

## D.    Bailey's Argument under U.S.S.G. § 1B1.13(b)(6), and the Applicable Statutory Penalties and Sentencing Guidelines Range, if Bailey were Sentenced Today

In his instant motion, Bailey makes the same "stacking" argument from his 2020 and 2022 compassionate release motions.  As the Court is aware, the First Step Act amended, among other things, 18 U.S.C. § 924(c), which mandates enhanced penalties for defendants who use, carry, brandish, or discharge a firearm during and in relation to any crime of violence or drug trafficking offense.  At the time of Bailey's sentencing, a second conviction under Section 924(c)—even one imposed in the same case as a first conviction under the statute—mandated the imposition of a minimum sentence of 20 years to run consecutive to all other sentences.  *See* 18 U.S.C. § 924(c)(1) (1997) ("In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years.").  Thus, defendants such as Bailey, who were convicted of multiple violations of Section 924(c) in the same action, faced a mandatory consecutive sentence of at least five years for the first conviction plus 20 years for each additional conviction.

Today, the enhanced penalty for a second conviction under Section 924(c) applies only where a defendant's first Section 924(c) conviction arose from a

13

separate case that has become final before the defendant's second Section 924(c) conviction.   18 U.S.C. § 924(c)(1)(B).  (The First Step Act did not amend the statutory maximum sentence allowed by Section 924(c), which remains life.)  As a result, if Bailey were sentenced today, he would face a 15-year mandatory consecutive sentence on the three Section 924(c) counts, rather than the 45 years he initially faced.[3]

That said, this amendment applies only prospectively.  *See Thacker*, 4 F.4th at 573.  That is, this change in law at issue is not retroactive, as discussed in detail below.

With regard to the Guidelines, if Bailey were sentenced today, his advisory Guidelines range on the armed-robbery and carjacking counts would remain unchanged.  The final offense level of 31 and Bailey's criminal history category IV would still apply.  Therefore, the advisory Guidelines range for Counts 1, 3, and 5 remains 151 to 188 months.

Accordingly, Bailey would be subject to a mandatory 15-year sentence for the three Section 924(c) counts (or 180 months) plus the advisory Guidelines range of 151 to 188 months.  Assuming he received the same within-Guidelines sentence for Counts 1, 3, and 5, and received the mandatory 180-month consecutive sentence for Counts 2, 4, and 6, Bailey's aggregate sentence would be 368 months.[4]

---

[3] As to his armed bank robbery and carjacking convictions, he would face the same statutory penalties.  *See* 18 U.S.C. §§ 2113(a) & (d), 2119.

[4] Of course, if sentenced today, all of Bailey's prior convictions could be considered too old to warrant criminal history points.  *See* U.S.S.G. § 4A1.2(e).  But notably,

14

**ARGUMENT**

The Court should deny Bailey's fourth Section 3582(c)(1)(A)(i) motion. Bailey again asks the Court to treat as retroactive changes in the law that Congress explicitly chose not to make retroactive. The Court should not do so, as the United States Sentencing Commission exceeded its authority in promulgating U.S.S.G. § 1B1.13(b)(6), the new provision on which Bailey relies. The law provides a narrow exception in 18 U.S.C. § 3582(c)(1)(A)(i) to the general rule that a federal court "may not modify a term of imprisonment once it has been imposed," permitting a court to reduce a term of imprisonment where it finds that "extraordinary and compelling reasons" warrant a reduction. Nonretroactive changes in sentencing law are neither. To the contrary, "in federal sentencing the ordinary practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced." *Dorsey v. United States*, 567 U.S. 260, 280 (2012). Accordingly, although Congress delegated broad authority to the Sentencing Commission, § 1B1.13(b)(6) is contrary to the statute's text, structure, and purpose, and is invalid under the reasoning of *United States v. Thacker*, 4 F.4th 569, 571 (7th Cir. 2021).

In addition, Bailey's remaining arguments do not constitute "extraordinary and compelling" reasons warranting a sentence reduction. The Court has already rejected most of Bailey's arguments and should do so again here.[5]

---

that revision does not reflect a "change in law" but rather the simple fact that 26 years have passed since Bailey's original sentencing.

[5] In a letter to the Court, counsel for Bailey state their intention to raise in their reply brief a new legal basis for relief—U.S.S.G. § 1B1.13(b)(5) ("other reasons")—emanating from Bailey's purported "excessive sentence, rehabilitation, low risk of

I.   **The Sentencing Commission Exceeded Its Congressionally Delegated Authority in Promulgating § 1B1.13(b)(6).**

A.   **In Exercising Its Authority, The Commission Cannot Act Contrary To The Statute**

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for [a] sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Such a delegation of authority, however, "is not unlimited." *Batterton v. Francis*, 432 U.S. 416, 428 (1977). Even when reached through an exercise of delegated authority, an agency's interpretation of a statute must be set aside if the agency's interpretation is not "reasonable." *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 58 (2011) (internal quotation marks omitted); *see Batterton*, 432 U.S. at 428. An agency cannot adopt an impermissible reading of the statute—*i.e.*, a reading that exceeds the gap left by Congress. *See Mayo Found.*, 562 U.S. at 53-58; *Batterton*, 432 U.S. at 428.

The Sentencing Commission in particular "was not granted unbounded discretion," and as the Supreme Court has explained, "[b]road as" the Commission's "discretion may be," it "must bow to the specific directives of Congress." *United*

---

recidivism, current and ongoing health conditions, youth at the time of the offense, and exceptional community support and release plan[.]" (Dkt. 174 at 1.) In his opening pro se brief, Bailey cites § 1B1.13(b)(5) only in relation to alleged "harsh prison conditions" largely arising from COVID-19 and does not meaningfully discuss the other factors that his pro bono counsel seek to argue in their reply brief. (Dkt. 157 at 25-26.) Accordingly, the United States respectfully requests the opportunity to respond to the forthcoming § 1B1.13(b)(5) claim that pro bono counsel has forecast.

16

*States v. LaBonte*, 520 U.S. 751, 753, 757 (1997); *cf. Mistretta v. United States*, 488 U.S. 361, 379 (1989) (reasoning that the discretion vested in the Commission does not violate the nondelegation doctrine because the Sentencing Reform Act "sets forth more than merely an 'intelligible principle' or minimal standards" to guide that discretion).  In the Sentencing Reform Act, itself, Congress directed the Commission to ensure that its Guidelines and policy statements remain "consistent with all pertinent provisions of any Federal statute."  28 U.S.C. § 994(a).  And Congress authorized the Commission only to "make *recommendations* to Congress concerning modification or enactment of statutes relating to sentencing."  *Id.* § 995(a)(20) (emphasis added).

## B. Section 1B1.13(b)(6) Conflicts With Section 3582(c)(1)(A)'s Plain Text, Context, And Purpose—As The Court Of Appeals Held in *Thacker*

Section 3582(c)(1)(A) is an "except[ion]" to the overarching principle of finality in federal sentencing law that a "federal court generally 'may not modify a term of imprisonment once it has been imposed.'"  *Dillon*, 560 U.S. at 819 (quoting 18 U.S.C. § 3582(c)).  Congress plainly instructed that any reason sufficient to overcome that general principle must be "extraordinary and compelling."  18 U.S.C. § 3582(c)(1)(A)(i).  No reasonable interpretation of the phrase "extraordinary" and "compelling," particularly when considered in light of the statute's structure and purpose, can encompass nonretroactive changes in law.  The Seventh Circuit has already held as much, determining that Section 3582(c)(1)'s clear meaning excludes intervening developments in sentencing law from constituting "extraordinary and

17

compelling" reasons for a sentence reduction, whether considered alone or in connection with other factors and circumstances.

Specifically, in *United States v. Thacker*, the Seventh Circuit rejected a defendant's claim that he was entitled to a sentence reduction due to the First Step Act's anti-stacking amendment. 4 F.4th 569, 571 (7th Cir. 2021). Thacker, who received a 33-year sentence premised in part on two Section 924(c) convictions, argued among other things that the change in law effected by the First Step Act qualified as an extraordinary and compelling reason supporting a sentencing reduction. *Id.* at 572. The district court denied his motion for compassionate release and the Seventh Circuit affirmed. *Id.* at 571.

Because the Seventh Circuit did not consider there to be a then-applicable policy statement, the court directly interpreted the statutory phrase "extraordinary and compelling" in the context of the "discretionary authority conferred by § 3582(c)(1)(A)." *Id.* at 574. In the end, the court concluded that the discretionary authority "only goes so far[, and] [i]t cannot be used to effect a sentencing reduction at odds with Congress's express determination embodied in [Section 403] of the First Step Act that the amendment to [Section] 924(c)'s sentencing structure apply only prospectively." *Id.* "To conclude otherwise," the court reasoned, "would allow a federal prisoner to invoke the more general [Section] 3582(c) to upend the clear and precise limitation Congress imposed on the effective date of the First Step Act's amendment to [Section] 924(c)." *Id.* (citing *United States v. Jarvis*, 999 F.3d 442, 443-44 (6th Cir. 2021)). In other words, "there is nothing 'extraordinary' about

18

leaving untouched the exact penalties that Congress prescribed and that a district court imposed for particular violations of a statute." *Id.*[6]

In rejecting Thacker's claim, the Seventh Circuit also expressed its "broader concerns with allowing § 3582(c)(1)(A) to serve as the authority for relief from mandatory minimum sentences prescribed by Congress." *Thacker*, 4 F.4th at 574. Specifically:

> We see nothing preventing the next inmate serving a mandatory minimum sentence under some other federal statute from requesting a sentencing reduction in the name of compassionate release on the basis that the prescribed sentence is too long, rests on a misguided view of the purposes of sentencing, reflects an outdated legislative choice by Congress, and the like.

*Id.* Thus, the court reasoned, "the discretion conferred by § 3582(c)(1)(A) does not include authority to reduce a mandatory minimum sentence on the basis that the length of the sentence itself constitutes an extraordinary and compelling circumstance warranting a sentencing reduction." *Id.*

The Commission's recent policy statement—which purports to allow intervening developments in sentencing law to constitute "extraordinary and compelling" reasons in direct conflict with *Thacker*—cannot provide a basis to reconsider that precedent, because "a precedent holding a statute to be unambiguous forecloses a contrary agency construction." *Nat'l Cable & Telecomm.*

---

[6] Other circuits have found likewise. *See, e.g.*, *United States v. Andrews*, 12 F.4th 255, 260-61 (3d Cir. 2021); *United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. 2023) (unpublished); *United States v. McCall*, 56 F.4th 1048, 1050 (6th Cir. 2022) (en banc); *United States v. Crandall*, 25 F.4th 582, 585-86 (8th Cir. 2022); *United States v. Jenkins*, 50 F.4th 1185, 1198-1200 (D.C. Cir. 2022).

*Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 984 (2005); *see Lechmere, Inc. v. NLRB*, 502 U.S. 527, 536-37 (1992) ("Once we have determined a statute's clear meaning, we adhere to that determination under the doctrine of stare decisis, and we judge an agency's later interpretation of the statute against our prior determination of the statute's meaning.") (internal quotation marks omitted).

Put differently, the Seventh Circuit's determination in *Thacker* remains binding here, and the Sentencing Commission "does not have the authority" to "override" that authoritative construction of the statute's clear meaning. *Neal v. United States*, 516 U.S. 284, 290, 294 (1996). The Commission's interpretation of the statute as set forth in § 1B1.13(b)(6) is unreasonable and therefore invalid. *See Mayo Found.*, 562 U.S. at 58; *LaBonte*, 520 U.S. at 753 (invalidating Guidelines amendment where "the Commission's interpretation is inconsistent with [the statute's] plain language").

### C. *Thacker* Correctly Interpreted Section 3582(c)(1)(a)(i).

The Seventh Circuit's precedent is, in any event, correct. To justify a sentence reduction under Section 3582(c)(1)(A)(i), a proffered reason must be both "extraordinary" and "compelling." As a matter of plain language, an intervening change in the law is neither.

Congress's decision not to apply a statutory change in sentencing law retroactively, in particular, is neither extraordinary nor compelling. Consistent with the "'fundamental canon of statutory construction' that words generally should be 'interpreted as taking their ordinary, contemporary, common meaning . . . at the

time Congress enacted the statute,'" *Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018), the word "extraordinary" should be understood "to mean 'most unusual,' 'far from common,' and 'having little or no precedent,'" *United States v. McCall*, 56 F.4th 1048, 1055 (6th Cir. 2022) (en banc) (quoting *Webster's Third New International Dictionary of the English Language* 807 (1971) (*Webster's*)).  Far from being unusual, uncommon, or unprecedented, a defendant's lawfully imposed sentence simply reflects the law at the time he was sentenced.

Here, Bailey invokes Congress's decision not to extend the First Step Act's amendment to Section 924(c) to defendants like him as a change in law warranting a sentence reduction.  In the First Step Act, Congress amended Section 924(c) to provide that the 25-year mandatory minimum in Section 924(c)(1)(C)(ii) and the mandatory life sentence in Section 924(c)(1)(C)(ii) do not apply unless the defendant has a prior Section 924(c) conviction that became final before the defendant's current § 924(c) violation.

In Section 403(b) of the Act, however, Congress made the deliberate choice not to make that amendment applicable to defendants who had been sentenced before the Act's enactment, specifying that the change would apply only "if a sentence for the offense has not been imposed as of such date of enactment." § 403(b), 132 Stat. 5222.  In so doing, Congress adhered to "the ordinary practice" in "federal sentencing" of "apply[ing] new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced." *Dorsey*, 567 U.S. at 280; *cf.* 1 U.S.C. § 109 (general nonretroactivity provision).

Given Congress's deliberate choice not to make the First Step Act's change to Section 924(c) applicable to defendants who had already been sentenced, there is nothing "extraordinary" about the fact that the defendant's sentence reflects the statutory penalty that existed at the time he was sentenced. *Thacker*, 4 F.4th at 574. That sentence "was not only permissible but statutorily required at the time." *United States v. Maumau*, 993 F.3d 821, 838 (10th Cir. 2021) (Tymkovich, C.J., concurring).

And when Congress enacted the First Step Act, it specifically declined to disturb Bailey's sentence for his second and third Section 924(c) convictions, even as it made other (previous) statutory changes applicable to defendants previously sentenced. In Section 404 of the same Act, for example, Congress expressly enacted a mechanism allowing defendants convicted under certain drug statutes (those for which penalties had been modified by certain provisions of the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372) to seek retroactive application of those statutory changes in their cases. Section 404 authorizes a sentencing court to "impose a reduced sentence as if [those provisions] of the Fair Sentencing Act" had been in effect at the time of the defendant's offense. § 404(b), 132 Stat. 5222. But Congress simultaneously declined to disturb Section 924(c) sentences that had already been imposed notwithstanding the different penalties that Section 403 would require courts to apply at future sentencings.

A nonretroactive change to a statutory provision likewise cannot constitute a "compelling" reason for a sentence reduction. When Congress enacted the

22

Sentencing Reform Act of 1984, "[c]ompelling" meant (and still means) "forcing, impelling, driving." *McCall*, 56 F.4th at 1055 (quoting *Webster's* 463). Thus, for a reason to be "compelling" under Section 3582(c)(1)(A)(i), it must provide a "forcing, impelling, [or] driving" reason to disturb the finality of a federal sentence. *Id.* (internal quotation marks omitted). Even beyond the First Step Act's explicit determination not to apply the amendment to Section 924(c) retroactively, ordinary principles of nonretroactivity already consider, and reject, the notion that changes in statutory law generally should be applied retrospectively. Congress enacts new sentencing statutes against a background principle, codified in 1 U.S.C. § 109, that a criminal statute does not change the penalties "incurred" under an older criminal statute "unless the repealing Act . . . so expressly provide[s]." The "strong presumption against statutory retroactivity" "is 'deeply rooted in our jurisprudence' and 'embodies a legal doctrine older than our Republic.'" *Jenkins*, 50 F.4th at 1198 (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994)). To treat a nonretroactive change in the law as a "compelling" reason to disturb a final sentence would thus undo the balance already struck by ordinary nonretroactivity principles. Nothing about a nonretroactive change in the law forces, impels, or drives such a nonsensical outcome.

Any disparity between Bailey's sentence and the sentence he would receive today is the product of deliberate congressional design—namely, Congress's decision not to make the First Step Act's change to Section 924(c) applicable to defendants who had already been sentenced. As the Supreme Court has recognized, such

23

"disparities, reflecting a line-drawing effort, will exist whenever Congress enacts a new law changing sentences (unless Congress intends re-opening sentencing proceedings concluded prior to a new law's effective date)." *Dorsey*, 567 U.S. at 280. And treating Congress's express adherence to "ordinary practice" in federal sentencing, *id.*, "as simultaneously creating an extraordinary and compelling reason for early release" would contravene various canons of construction, *Andrews*, 12 F.4th at 261.

Accordingly, a nonretroactive change in the law cannot serve as either an "extraordinary" or a "compelling" reason for a sentence reduction in isolation or as adding to a package of such "reasons." 18 U.S.C. § 3582(c)(1)(A)(i). Whether considered alone or in combination with other asserted factors, the possibility that a previously sentenced defendant might receive a lower sentence if he were sentenced today is a "legally impermissible" consideration for purposes of determining whether an extraordinary and compelling reason exists. *Jenkins*, 50 F.4th at 1202 (internal quotation marks omitted); *see United States v. Jarvis*, 999 F.3d 442, 444 (6th Cir. 2021) (explaining that a prospective change to sentencing law is a "legally impermissible ground" for finding an "extraordinary and compelling reason," even when it is "combined with" other considerations).

**D.    The Context of Section 3582(c) Further Confirms that the Term "Extraordinary and Compelling" Cannot Encompass Nonretroactive Changes in Law.**

Section 3582(c)(1)'s context further confirms that the term "extraordinary and compelling" cannot encompass nonretroactive changes in law. "Statutory

24

construction," moreover, "is a holistic endeavor" and a provision "is often clarified by the remainder of the statutory scheme." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988).  In the very next paragraph of Section 3582(c), Congress expressly authorized courts to modify a term of imprisonment where a defendant was sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission."  18 U.S.C. § 3582(c)(2).  There would have been no reason for "the same Congress, skeptical of sentence modifications as a general rule," to have "provide[d] for the retroactive application of specific changes in sentencing law in § 3582(c)(2)" had Section 3582(c)(1)(A)(i) "already covered all legal developments, retroactive or not." *McCall*, 56 F.4th at 1056.  That Congress did not similarly provide the Commission with authority to revisit sentences in light of statutory amendments or changes in law suggests that Congress did not intend for Section 3582(c)(1)(A) to reach such changes.

More broadly, reducing sentences based on intervening changes in the law also would undermine congressional design more generally because, as noted above, a motion brought pursuant to 28 U.S.C. § 2255 is the "remedial vehicle" Congress "specifically designed for federal prisoners' collateral attacks on their sentences." *Jones v. Hendrix*, 599 U.S. 465, 473 (2023); *see Thacker*, 4 F.4th at 574 (explaining that Section 2255 provides the "principal path" that Congress has "established for federal prisoners to challenge their sentences" after they have become final).  Treating a nonretroactive change in the law as an "extraordinary and compelling"

25

reason for a sentence reduction would allow defendants to "avoid the restrictions of the post-conviction relief statute by resorting to a request for compassionate release instead." *Crandall*, 25 F.4th at 586. It "would wholly frustrate explicit congressional intent to hold that [defendants] could evade" those restrictions "by the simple expedient of putting a different label on their pleadings." *Preiser v. Rodriguez*, 411 U.S. 475, 489-90 (1973). Congress surely "knew of its specific statutory scheme authorizing post-conviction relief" both "when it [enacted Section 3582(c)(1)(A)] in 1984 and amended it in 2018," and had "Congress intended the compassionate-release statute to act as an exception to this post-conviction framework, it would have made that intent specific." *McCall*, 56 F.4th at 1057-58 (internal quotation marks omitted).

E. **Granting "Compassionate Release" Under Section 3582(c)(1)(A)(i) Based on Nonretroactive Changes in Law Would Undermine a Primary Purpose of the Sentencing Reform Act.**

Through the Sentencing Reform Act, Congress sought to eliminate the "'unjustifi[ed]' and 'shameful' consequences" of a sentencing regime that produced "great variation among sentences imposed by different judges upon similarly situated offenders" and "uncertainty as to the time [an] offender would spend in prison." *Mistretta*, 488 U.S. at 366 (quoting S. Rep. No. 98-225, at 38, 65 (1983) (Senate Report)); *see also Neal*, 516 U.S. at 290-91 ("The Commission was born of congressional disenchantment with the vagaries of federal sentencing and of the parole system"). The practices of federal courts and the Parole Commission left "each judge . . . to apply his own notions of the purposes of sentencing," resulting in

an "astounding" and "inevitable disparity" in sentencing that was "not justified by differences among offenses or offenders" and was "unfair both to offenders and to the public." Senate Report at 38, 41, 45. "A primary goal" of the Act was "the elimination of unwarranted sentencing disparity." Senate Report at 52. In "overhaul[ing] federal sentencing practices" by "abandon[ing] indeterminate sentencing and parole," Congress sought to "channel[ ] judges' discretion by establishing a framework to govern their consideration and imposition of sentence." *Tapia*, 564 U.S. at 325.

Consistent with Congress's goal of determinate sentencing, Section 3582(c)(1)(A) was enacted as a narrow "safety valve" for "unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances." Senate Report at 55, 121. Congress anticipated that such "justification[s] for reducing a term of imprisonment" would arise in a "relatively small number" of cases, and specifically identified severe or terminal illness as the archetype of "extraordinary and compelling circumstances" that would justify reducing a sentence. *Id*. at 55-56, 121.

Section 1B1.13(b)(6), however, purports to allow a district court to reduce a defendant's sentence when, in the judge's estimation, the defendant received "an unusually long sentence" that, accounting for nonretroactive changes in law, now represents a "gross disparity" from the sentence the court would likely impose today. U.S.S.G. § 1B1.13(b)(6). That authority is incompatible with the Sentencing Reform Act's overarching purpose and Congress's specific intent with respect to

27

Section 3582(c)(1)(A), and it effectively reproduces the indeterminate system the Act sought to eliminate, in which judges applied their own varied "notions of the purposes of sentencing." Senate Report at 38. Individual judges inevitably will have divergent views concerning the fairness of adhering to the ordinary practice of applying a change in law prospectively, whether a sentence lawfully imposed under the prior regime is "unusually long," and whether Congress's or the courts' assessment not to apply a change in law retroactively produces a "gross disparity," and what a "gross disparity" looks like. It is doubtful the Sentencing Reform Act "contained the[ ] seeds of its own destruction," *Jenkins*, 50 F.4th at 1202, and there is no basis to think that, notwithstanding the Act's express purpose to eliminate parole in favor of determinative sentencing, Congress nevertheless created such "a freewheeling opportunity for resentencing based on prospective changes in sentencing policy or philosophy," *Crandall*, 25 F.4th at 586; *see also United States v. Peoples*, 41 F.4th 837, 841 (7th Cir. 2022) (applying the same reasoning in declining to interpret 3582(c) as allowing good prison conduct and rehabilitation, alone, as a basis for early release).

The Sentencing Commission's explanation for the amendment cites a single sentence from the Senate Report to support its conclusion that Section 3582(c)(1)(A)(i) allows courts to reduce "unusually long sentences." *See* 88 Fed. Reg. at 28,258. In the relevant passage, the Senate Judiciary Committee expressed its belief that the "unusual cases in which an eventual reduction in the length of a term of imprisonment" would be "justified by changed circumstances" might include

28

"cases of severe illness" or "cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence."  Senate Report at 55.  The Commission takes that line—which is ambiguous at best—out of context and elevates that single sentence above the Act's plain text and overarching purpose.  In context, the passage suggests only that Congress anticipated that the sort of "changed circumstances" that might warrant a sentence reduction would most often emerge during the duration of an "unusually long" period of incarceration—during which a prisoner might become elderly or infirm, for example.  *Id.*  Indeed, the passage makes clear that to justify even the reduction of an unusually long sentence Congress understood Section 3582(c)(1)(A) to require the identification of particular "extraordinary and compelling circumstances."  *Id.*  The passage does not suggest that Section 3582(c)(1)(A) provides authority to reduce any sentence a court subsequently comes to view, in hindsight, as "unusually long."

The Commission also invokes the First Step Act of 2018's stated intent to increase the use of sentence reduction motions.  *See* 88 Fed. Reg. at 28,256; § 603(b), 132 Stat. 5239.  But nothing about the First Step Act's procedural amendment to Section 3582(c)(1)(A) or Congress's expectation that the amendment would lead to greater use of the provision "suggests Congress intended to change th[e] substantive status quo with a process-oriented amendment."  *McCall*, 56 F.4th at 1060.  Congress's effort to allow defendants to file sentence-reduction motions directly sought to remedy perceived deficiencies in the BOP's preexisting procedures, which

29

prevented the BOP from bringing Section 3582(c)(1)(A) motions on behalf of some defendants who satisfied longstanding criteria for relief.   Congress, however, did not amend the statutory requirement that reasons for a sentence reduction be extraordinary and compelling.  Tellingly, the amendment explicitly conditioned a defendant's filing on a requirement that he first "exhaust[ ]" with BOP a request that BOP "bring a motion on the defendant's behalf."  18 U.S.C. § 3582(c)(1)(A). Congress could not have expected BOP to evaluate whether an intervening change in law warranted a defendant's early release from custody; indeed, BOP typically plays no role in "determining the lawfulness of individual sentences," "calculating guideline ranges," or assessing the possible disparity produced by a defendant's sentence.  *See Jenkins*, 50 F.4th at 1205-06.  In short, nothing about the First Step Act's procedural amendment "indicates any intention on Congress's part" to "fundamentally change the nature of compassionate release." 4/5/23 Tr. 64-66 (Vice Chair Murray, delivering joint statement); *cf. Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress . . . does not, one might say, hide elephants in mouseholes.").

> **F.     The Commission's Interpretation of Section 3582(c)(1)(A)(i) as Empowering District Courts to Apply Nonretroactive Changes in Law to Particular Defendants is in Serious Tension with Basic Separation-of-Powers Principles.**

In upholding the Sentencing Commission's constitutionality, the Supreme Court observed that the Commission is not vested with "the legislative responsibility for establishing minimum and maximum penalties for every crime." *Mistretta*, 488 U.S. at 396.  "Congress generally cannot delegate its legislative

power to another Branch," *id*. at 372, and "[w]hatever views may be entertained regarding severity of punishment, . . . these are peculiarly questions of legislative policy," *Gore v. United States*, 357 U.S. 386, 393 (1958).  The Commission does not pose a nondelegation or separation-of-powers concern, the Court held, precisely because Congress delegated to the Commission "nonadjudicatory functions that do not trench upon the prerogatives of another Branch." *Mistretta*, 488 U.S. at 388.  Section 1B1.13(b)(6) contravenes those limits by purporting to empower courts to ignore Congress's retroactivity determinations on a case-by-case basis.

The separation-of-powers concern is particularly apparent when one considers the Commission's directive regarding *its own* retroactivity determinations.  Section 3582(c)(2) permits a defendant "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission" to move for a sentence reduction "consistent with applicable policy statements issued by the Sentencing Commission," and Guidelines Section 1B1.10 identifies particular Guidelines amendments that the Commission has elected to make retroactive.  *See* U.S.S.G. § 1B1.10(a), (d).  In § 1B1.13(b)(6), the Commission expressly excluded "an amendment to the Guidelines Manual that has not been made retroactive" from qualifying as an extraordinary and compelling reason for a sentence reduction.  U.S.S.G. § 1B1.13(b)(6); *see* 88 Fed. Reg. at 28,259.  The Commission accordingly precluded courts from using compassionate release as an end-run around the *Commission's* own determinations concerning the retroactive application of its Guidelines amendments.  But by permitting other changes in law,

31

including a statutory change that *Congress* explicitly declined to make retroactive, to qualify, the Commission declined to afford the same respect to Congress's retroactivity determinations. That counterintuitive result cannot be squared with the Commission's statutory authority. *See, e.g.*, *LaBonte*, 520 U.S. at 757 (the Commission "must bow to the specific directives of Congress").

Indeed, such concerns are particularly apparent with respect to Bailey's invocation of the First Step Act's anti-stacking amendment, Section 403. In the same statute in which Congress amended Section 3582(c)(1)(A) to permit defendants to directly file sentence-reduction motions, Congress made the deliberate choice *not* to make Section 403 applicable to a defendant who was sentenced before the First Step Act's enactment. Congress specified that the change would apply only "if a sentence for the offense has not been imposed as of such date of enactment." § 403(b), 132 Stat. 5222. Any disparity between Bailey's sentence and the sentence he would receive today thus is the product of deliberate congressional design. *Thacker*, 4 F.4th at 573 ("Interpreting § 403 to apply retroactively would unwind and disregard Congress's clear direction that the amendment apply prospectively.") And there is no reason to think that "the same Congress that specifically decided to make these sentencing reductions non-retroactive in 2018 somehow mean[t] to use a general sentencing statute from 1984 to unscramble that approach." *United States v. Jarvis*, 999 F.3d 442, 444 (6th Cir. 2021); *see United States v. Andrews*, 12 F.4th 255, 261 (3d Cir. 2021) ("[W]e will not construe Congress's nonretroactivity directive as simultaneously creating an

32

extraordinary and compelling reason for early release.  Such an interpretation would sow conflict within the statute.").

\*   \*   \*

For the foregoing reasons, the Court should conclude that U.S.S.G. § 1B1.13(b)(6) is not a lawful exercise of the Sentencing Commission's authority and accordingly should deny Bailey's claim for compassionate release under that provision.  The government respectfully requests that the Court first address this threshold legal question, and should the Court determine that the new Guidelines provision is in fact valid, the government would then request leave to address the Section 3553(a) factors, which this Court previously analyzed in its August 13, 2020 Opinion, and the appropriate final sentence in this case.

## II.    There Are No Other Extraordinary and Compelling Reasons.

This Court should likewise deny Bailey's other claims for compassionate release, as they largely repeat arguments made in his prior compassionate release motions, including his medical condition, COVID-19, and his rehabilitation while in prison.  (*Compare* Dkt. 157 *with* Dkt. 104, 151.)  Bailey's arguments regarding the conditions in prison are likewise not extraordinary and compelling.

First, with respect to his medical condition, Bailey notes that he is pre-diabetic, has high blood pressure, suffers from lung issues that make breathing very difficult, and suffers from anxiety and depression.  Bailey's medical records support his contention that he suffers from diabetes and hypertension, but they also show that Bailey has been regularly treated for these conditions and has been prescribed

several medications.  (*See* Exhibit 3, BOP Medical Records (2022-23) at 1-2, 5.)

Despite being prescribed these medications, Bailey has refused to take them and

has been assessed as noncompliant with his medical treatment plan.  (*See id.* at 1-2,

10, 21.)  In addition, many of Bailey's health conditions may be the result of poor

lifestyle choices, as his medical records indicate he is obese, was advised to lose at

least 20 to 25 pounds, and was counseled on dietary and lifestyle changes.  (*See id.*

at 10, 21; Exhibit 4, BOP Medical Records (2021-22) at 1-2, 4.)

Bailey's refusal of treatment and failure to implement the recommended

lifestyle changes undermine his claim that his medical condition is sufficiently

serious to warrant compassionate release.  *See United States v. Melgarejo*, No. 12-

cr-20050-JES-DGB, 2020 WL 2395982, at *4 (C.D. Ill. May 12, 2020) (finding

defendant had not met his burden to establish extraordinary and compelling

reasons based in part on defendant's regular refusal to take his hypertension

medicine); *United States v. Johnson*, No. 1:08-cr-95-HAB, 2020 WL 4593327, at *3

(N.D. Ind. Aug. 11, 2020) ("The Court struggles to believe that an individual should

obtain the extraordinary relief of compassionate release simply because they have

failed to take care of themselves.").  Even with Bailey's refusal of treatment, there is

nothing in the medical records to suggest Bailey's conditions are not well managed

in the prison setting.

Second, in the context of COVID-19, the Seventh Circuit has held that for

most prisoners, "the availability of a vaccine makes it impossible to conclude that

the risk of COVID-19 is an 'extraordinary and compelling' reason for compassionate

release." *United States v. Broadfield*, 5 F. 4th 801, 803 (7th Cir. 2021). That is true even when the prisoner's medical conditions put him at increased risk from COVID-19. *United States v. Kurzynowski*, No. 20-3491, 2021 WL 5143900 at \*1 (7th Cir. Nov. 5, 2021) (finding, despite inmate's obesity, diabetes, and hypertension, that under *Broadfield*, "the fact that Kurzynowski is vaccinated precludes a finding that the COVID-19 pandemic presents extraordinary and compelling reasons for his release"). Bailey's medical records show that he received the COVID-19 vaccine in 2021 and 2022.[7] (*See* Exhibit 4 at 19.) Therefore, under binding circuit precedent, the ongoing threat of COVID-19 cannot constitute an "extraordinary and compelling" reason to reduce his sentence.

Next, Bailey raises a multitude of complaints about the purported conditions of the prison where he is incarcerated, particularly during the COVID-19 pandemic, including inadequate medical attention, moldy food, a lack of phone and computer access and programming, and only three showers a week. He claims that these constitute "other reasons" pursuant to U.S.S.G. § 1B1.13(b)(5). To fall within this provision, however, the circumstances must be "similar in gravity to those described in paragraphs (1) through (4)," *i.e.*, medical circumstances, age, family circumstances, and victim of abuse. Difficult prison conditions, including during COVID-19, do not meet this standard. *See, e.g.*, *United States v. Hernandez*, 2024 WL 52287, at \*3 (D. Kan. Jan. 4, 2024) ("Operational difficulties at prisons during

---

[7] Notably, after receiving two doses, Bailey refused the COVID-19 vaccine on April 11, 2023 and November 7, 2023, (*see* Exhibit 3 at 47), further undercutting any claim that the risk presented by COVID-19 warrants relief.

35

the COVID-19 pandemic [are] not similar in gravity to the extraordinary and compelling reasons set forth in those paragraphs."). If that were the case, then every prisoner incarcerated at this facility during this time would be entitled to receive a reduction in their sentence because they, too, experienced the alleged difficult prison conditions. *See id.* In any event, Bailey concedes that these conditions are not ongoing, as he indicates they occurred from "November of 2021 through January of 2023." (Dkt. 157 at 25.)

Finally, although Bailey acknowledges that rehabilitation alone cannot be considered an extraordinary and compelling reason, *see* 28 U.S.C. § 994(t), he nonetheless argues that this should be considered together with his other claims for relief. And while the government observes that Bailey has received only one disciplinary infraction in the past 20 years,[8] as demonstrated above, there is no other extraordinary and compelling reason for compassionate release in this case.

In any event, even if Bailey's reasons for release were considered "extraordinary and compelling," the Court should still deny his motion because he has not demonstrated he no longer poses a risk to public safety. *See* U.S.S.G. § 1B13(a)(2); *see also United States v. Swain*, No. 2:15-cr-00019-JMS-CMM, 2020 WL 2949775 at \*5 (S.D. Ind. June 3, 2020) ("Even if Mr. Swain had presented

---

[8] At the time of his 2020 compassionate release motion, when the Court commended Bailey on his behavior while incarcerated, Bailey had not received any disciplinary infractions since 2001. However, since the prior motion, Bailey was cited in April 2021 for being in an unauthorized area. (Exhibit 5, Inmate Discipline Data at 1.)

extraordinary and compelling reasons warranting a sentence reduction, the Court would deny his motion because he presents a danger to the community.").

As discussed herein and in the Court's August 13, 2020 Opinion, Bailey's crimes were serious and endangered several people. Even before the instant offense, Bailey had a significant criminal history, which began when he was 15 years old, and includes adult convictions for theft, auto theft, and multiple robberies involving firearms or the threat of firearms. As this Court previously observed, defendants who commit violent felonies are more likely to recidivate than those who commit non-violent felonies, and defendants who commit robberies are more likely to recidivate than defendants who commit other violent felonies. (Dkt. 112 at 9.) Bailey has thus not demonstrated that he is no longer a danger to the safety of the community. He should not receive the "extraordinary remedy" of compassionate release.

For all of these reasons, the Court should deny Bailey's motion.

**CONCLUSION**

The United States respectfully requests the Court deny Bailey's Motion for a

Sentence Reduction.

Respectfully submitted,

ZACHARY A. MYERS
United States Attorney

By:    /s/ Meredith Wood
       Meredith Wood
       Assistant United States Attorney
       Office of the United States Attorney
       10 W. Market Street, Suite 2100
       Indianapolis, IN 46204-3048
       Telephone: (317) 226-6333
       Fax: (317) 226-6125
       Email:  Meredith.Wood@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 19, 2024, a copy of the foregoing was filed

electronically.  Notice and service of this filing will be sent to the following counsel

of record via the Court's CM/ECF system:

John Gleeson
Steven Garrett Tegrar
Molly Sherwood
Debevoise & Plimpton LLP
66 Hudson Boulevard
New York, NY 10001
(212) 909-6000
jgleeson@debevoise.com
sgtegrar@debevoise.com
msherwoo@debevoise.com


By:    /s/ Meredith Wood
         Meredith Wood
         Assistant United States Attorney
         Office of the United States Attorney
         10 W. Market Street, Suite 2100
         Indianapolis, IN 46204-3048
         Telephone: (317) 226-6333
         Fax: (317) 226-6125
         Email:  Meredith.Wood@usdoj.gov